Wheeler, J.
At a former term an opinion was pronounced reversing the judgment in this case. But a rehearing having been allowed, the ease was taken under advisement, and its reconsideration has resulted in a different conclusion, by a majority of the Court, from that adopted in the first instance.
The liabilities sought to be enforced against the Government by this proceeding were created before the change of Government effected by annexation. After the change of Government and the adoption of the State Constitution, the office of assessor and collector was created, and the duties of the officer prescribed by the act of the 13th of May, 1846. (Acts of 1846, p. 347.) The 23d section of the act declares in what the officer shall collect the taxes, as follows : “ The assessors and collectors of taxes in the State of Texas shall receive in payment of all taxes and revenue imposed according to law, all coins made current by the laws of the United States, and the exchequer bills of the Republic of Texas.”
The question to be decided is, was the assessor and collector authorized to receive in payment of taxes the certificates in question? Or was he authorized to receive any other liabilities of the former Government than “exchequer bills” specified in the act? We think not. This is, we think, a case in which the expression of one thing was intended to be the exclusion of another. It is-the ease of an affirmative which implies a- negative of all that is not expressed. The sole object of the provision must have been to give a preference to and provide for the payment of those liabilities of the former Government., denominated “ exchequer bills; ” for, without any express provision upon the subject, “all coins made current by the laws of the United States” would have been receivable for taxes. Had there been no express direction as to what should be received, the question would be different. But when the Legislature have undertaken to enumerate what shall be received, the enumeration must, we think, be taken to include all that was intended, and consequently to exclude all that is not included in the enumeration. When they have undertaken thus affirmatively to prescribe the particular currency in which the takes shall be. received, we must conclude that it was their intention that nothing else should be received. By selecting from among the liabilities of the former Government. *212 this particular class, it evidently was intended to discriminate in its favor; and where the legislative intention is clear, if not inconsistent with the Constitution, it is the duty of the courts to give effect to that intention. The statute referred to is entitled “An act to provide for the assessment and collection of taxes.” It was intended to contain an entire system upon that subject. It creates the office of assessor and collector, and prescribes and defines the duties of his office. It affirmatively directs and enumerates what shall be received by him for taxes, and thereby, in our opinion, evidences the intention of the Legislature that nothing- else should be received as certainly as if it had super-added an express prohibition to that effect.
“Affirmatives in statutes that introduce a new rule imply a negative of all that is not within the purview.” (1 Kent Comm., 5th edit., 467, n.) “Affirmative words in a statute do sometimes ” and, it is believed, where the public is concerned in the performance of official duties they do always “imply a negative of what is not affirmed as strongly as if expressed.” (Ib.) “And where a statute limits a thing to be done in a particular form it includes in itself a negative, viz, that it snail not be done otherwise.” (Ib.) Again, “if a subsequent statute be not repugnant in all its provisions to a prior one, yet, if the latter statute was clearly intended to prescribe the only rules which should-govern, it repeals the prior one.” (3 How. U. S. R., 636.) So a subsequent statute revising the subject-matter of a former one, and evidently intended as a substitute for it, although it contains no express words to that effect, must operate to repeal the former to the extent to which its provisions are revised and supplied. (1 Ashm. R., 179.) And “ where a statute is revised or one act framed from another, some parts being omitted, the parts omitted are not to be revived by construction, but are to be considered as annulled.” (Ellis v. Paige, 1 Pick. R., 43, 45.) These principles are applicable to the act under consideration, considered in reference to the statutes upon the same subject in force prior to the change of Government effected by annexation.
It undoubtedly is true that a construction which repeals former statutes by implication is not to be favored; and it is also true that statutes in pari materia and relating to the same subject are to be taken and construed together, because it is to be inferred that they had one object in view, and were intended to be considered as constituting one entire and harmonious system. But when the new statute in itself comprehends the entire subject and creates a new, entire, and independent system respecting that subject-matter, it is universally held to repeal and supersede all previous systems and laws respecting the same subject-matter. (7 Mass. R., 140; 12 Id., 537, 545 ; 4 Pick. R., 21, 23 ; 10 Id., 39; 1 Id., 452; 1 Id., 43; 9 Id., 97; 3 Greenl. R., 22; 1 Ashm. R., 179.) Such is peculiarly the case with the act under consideration. It was framed under a new Constitution, which reorganized the entire frame of the Government, of which it was a consequence that every person who should thereafter exercise, the functions of any State office must look solely to that Constitution and the laws enacted subject to it for his authority and powers; and it was enacted for the purpose of effectuating an entirely new revenue system upon a new basis and for the support and maintenance of a new Government. We can entertain no doubt, therefore, that it was intended as an entire, complete, and perfect system upon that subject, and as certainly to supersede all former systems and laws upon the same subject as the now superseded the former Government. This view is strengthened by the fact that one of the principal sources of the revenue which existed when those liabilities were created — the duly on importation — was afterwards taken away by the change of Government.
We conclude that when the Legislature directed the assessors and collectors of the State of Texas to receive in payment of taxes “all coins made current by the laws of the United States and the exchequer bills of the Republic of Texas,” they meant these and nothing else, as certainly as If they had subjoined express negative words. Statutes which prescribe. and limit the exercise of official duty ought to receive a strict interpretation in respect to the powers conferred and the'Inanuer of their exercise, and those powers are no* *213 to be enlarged by construction. The officer must look to the act by which Ills office is created and its duties are defined to ascertain the extent of his powers and-tho line of his duties; and he is not at liberty to transcend the former or vary the prescribed mode of performance of the latter. The act sought to be enforced in this instance was in effect forbidden; and that a mandamus will not lie to compel an officer of the Government to perform an act forbidden by law has been heretofore decided by this court. (Hosner v. De Young, 1 Tex. R., 764; League v. De Young, 2 Tex. R., 497.) The certificates in question constitute the evidence of demands against the Government, which doubtless are meritorious ana just, and which as such address themselves to the sense of justice of the Legislature, but which the courts, in the absence of a law authorizing their payment, have not the power to enforce against the Government. (Borden v. Houston, 2 Tex. R., 594, 611, 613.)
Note 73. — Lovett v. Casey, 17 T., 594; Cain v. The State, 20 T., 355; Solman v. Wolfe, 27 T., 68.
We are of opinion, therefore, that the judgment be affirmed.
Judgment affirmed.