QUESTION: Is a municipality authorized to deposit its own funds in out-of-state national or state banks?
SUMMARY: Section 659.24, F.S., does not authorize the Department of Banking and Finance to designate or regulate out-ofstate banks as depositories of public moneys. The jurisdictional power of the Department of Banking and Finance and of the Comptroller as head of the Department of Banking and Finance is coextensive with the territorial boundaries of the State of Florida and limited thereby. In your letter you have referred this office to ss. 659.24 and 658.02, F.S., and AGO 072-272. Said opinion pointed out that public funds of municipalities or special taxing districts were subject to s. 659.24 and not to s. 136.01, F.S. Section 659.24, F.S., provides in part: (1) Banks shall be depositories of public moneys under such regulations as may be prescribed by the department and they may also be employed as financial agents of the state and they shall perform such reasonable duties as depositories of public moneys and financial agents of the state as may be required of them. The department shall require banks so designated to give satisfactory security by the deposit of bonds of the United States, the state or political subdivisions or other satisfactory security for the safekeeping and prompt payment of the public moneys deposited with them and for the faithful performance of their duties as financial agents of the state. A bank or trust company may also pledge its assets to: (Emphasis supplied.) You have not referred this office to any regulation of the Department of Banking and Finance on the subject question and accordingly it is presumed that none exists. The statute uses the word "banks," and it is apparently the use of such word which prompts your inquiry in light of the definition of bank found in s. 658.02(1), F.S. Said section provides: "Bank" means any person doing a banking business whether subject to the laws of this or any other jurisdiction other than industrial or Morris plan banks operating under the provisions of chapter 656, and savings banks operating under the provisions of chapter 654. (Emphasis supplied.) Inasmuch as s. 659.24, F.S., does not specifically restrict the term banks to banks located in the State of Florida, you inquire as to whether or not the department is authorized to designate banks located outside of the state or in other states to be depositories of public moneys of the various municipalities and other public bodies, not including the counties and the school boards. Thus, your question may be stated as follows:
Is the Department of Banking and Finance, pursuant to s. 659.24(1), F.S., authorized to designate out-of-state banks as depositories of public moneys to be regulated by the department as set forth in the statute? Your question is answered in the negative. Neither s. 658.02(1), F.S., nor s. 659.24, F.S., specifically authorizes the department to designate out-of-state banks, not capable of being regulated by the department, as depositories of public moneys. The law is abundantly clear that the jurisdiction of the state is coextensive with the territorial boundaries of the state, and similarly the jurisdiction of state officers, agents, and departments is coextensive with the territorial boundaries of the state. The Legislature has no power to enact a statute extending a state's power beyond its jurisdictional boundaries or to attempt to regulate persons, corporations, or activities beyond its jurisdictional boundaries. In the case of American Fire Insurance Co. v. King Lumber and Mfg. Co., 77 So. 169, the Supreme Court of Florida was required to consider the extraterritorial effect of laws enacted by a sovereign state. In doing so, the court stated at p. 172: It is undoubtedly true, as is argued by the defendant, and which the plaintiff admits, that a state may not extend the operation of its statutes beyond its borders into the jurisdiction of other states. As was said by Mr. Chief Justice White in New York Life Insurance Co. v. Head, 234 U.S. 149, text 161, 34 Sup.Ct. 879,58 L.Ed. 1259, which language is quoted and relied upon by the defendant, in discussing the power of the state of Missouri to extend its authority into the state of New York: "Such question, we think admits of but one answer, since it would be impossible to permit the statutes of Missouri to operate beyond the jurisdiction of that state and in the state of New York, and there destroy freedom of contract, without throwing down the constitutional barriers by which all the states are restricted within the orbits of their lawful authority and upon the preservation of which the government under the Constitution depends. This is so obviously the necessary result of the Constitution that it has rarely been called in question, and hence authorities directly dealing with it do not abound. The principle, however, lies at the foundation of the full faith and credit clause, and the many rulings which have given effect to that clause. It is illustrated as regards the right to freedom of contract by the ruling in Allgeyer v. Louisiana,165 U.S. 578 [17 Sup.Ct. 427, 41 L.Ed. 832], and it finds expression in the decisions of this court affirmatively establishing that a state may not consistently with the due process clause of the Fourteenth Amendment extend its authority beyond its legitimate jurisdiction, either by way of the wrongful exertion of judicial power or the unwarranted exercise of the taxing power." (Emphasis supplied.) Further therein the court stated: "Neither the Legislature nor the courts of Florida could extend the operation of its statutes beyond its borders . . . ." (Emphasis supplied.) The Florida case was subsequently appealed to the U.S. Supreme Court where the decision was affirmed in 250 U.S. 2. Therein at p. 10 of 250 U.S., the Supreme Court stated: Nor does the case present an attempt of the Florida law to intrude itself into the State of Pennsylvania and control transactions there; it presents simply a Pennsylvania corporation having the permission of that State to underwrite policies on property outside of the State and the exercise of the right in Florida. And necessarily it had to be exercised in accordance with the laws of Florida. There was no law of Pennsylvania to the contrary — no law of Pennsylvania would have power to the contrary. There is no foundation, therefore, for the contention that full faith was not given to a law of Pennsylvania, nor of a denial of a right to a citizen of Pennsylvania, nor of a denial of due process or the equal protection of the law. (Emphasis supplied.) Further, beginning at p. 11, the Supreme Court stated: . . . Its basic proposition is that a State has no jurisdiction of persons or property beyond its borders or of contracts executed beyond its borders, and it invokes the proposition by the assertion that the policies were Pennsylvania contracts and being such were immune from regulation by Florida, and New York Life Insurance Co. v. Head,234 U.S. 149, is adduced as typical. In that case the principle was expressed that the laws of a State could not be extended beyond its confines, and it was concretely applied in the case to deny to the State of Missouri the right to extend its authority into the State of New York and there forbid a citizen of New Mexico and a citizen of New York from making a loan agreement in New York simply because it modified a contract originally made in Missouri. The difference between that case and this is manifest, and the other cases relied on are not nearer in point. The Florida statute does not attempt to invade Pennsylvania and exercise control there. It stays strictly at home in this record and regulates the insurance company when it comes to the State to do business with the citizens of the State and their property. (Emphasis supplied.) The department would be without power beyond the territorial boundaries of the State of Florida to require banks to give satisfactory security by the deposit of bonds as required in the statute for the simple reason that the statute would be of no effect outside of the state. Banks outside of the State of Florida would be subject to the laws of the state or jurisdiction from which their creation and power arose. Numerous cases from various jurisdictions have considered the subject and arrived at the same basic conclusion which is that a state's power or jurisdiction is coextensive with the territorial boundaries of its sovereignty and operative only upon all persons and things located therein and that conversely such power or jurisdiction does not extend beyond its boundaries. (See State v. City of Hudson, 42 N.W.2d 546 ( S.Ct. Minn.); McCullough v. Scott, 109 S.E. 789 (S.Ct. N.C.); State v. Hocker, 22 So. 721; Swift Co. v. Peterson,233 P.2d 216; Department of Financial Institutions v. General Finance Corp., 86 N.E.2d 44, 10 A.L.R.2d 436; Pink v. A.A.A. Highway Exp.,86 L.Ed. 200, 62 S.Ct. 241, 137 A.L.R. 957; Advisory Opinion to Governor, 13 Fla. 687; and 81 C.J.S. States, beginning at p. 860.) The Swift Co. case, supra, points out that no legislation is presumed to be intended to operate outside of the jurisdiction of the state enacting it emphasizing that the exercise of the police power is limited to the protection of the people and property of the state enacting it. It declared that ". . . no state or nation can by its laws directly affect, bind or operate upon property or persons beyond its territorial jurisdiction." This same principle is recognized in the case of State v. Dickinson, 193 So.2d 607 at p. 609, wherein the court stated: It was never contemplated that taxing officials in other states would collect and remit such tax to the State Comptroller of the State of Florida at the time such instruments were recorded in such states. In 50 Am.Jur., Statutes, s. 485, the text states: ". . . Thus, the general rule is that no state or nation can, by its laws, directly affect, bind, or operate upon property or persons beyond its territorial jurisdiction. . . ." (text) 509 (Emphasis supplied.) The McCullough case, supra, pointed out that it was elementary that when the law confers upon a person power that he as a natural person does not possess that power cannot accompany his person beyond the bounds of the sovereignty which has conferred the power, observing, beginning at p. 794, as follows: In the case of Miller v. Ewor, 27 Me. 509, 46 Am. Dec. 619, it was held that a general clause in a charter authorizing certain persons to call the first meeting of a corporation at such time and place as they think proper does not authorize them to call the meeting at a place without the state. . . . (Emphasis supplied.) At p. 796, the court stated: . . . The law is unmistakably clear that the Legislature has no power to enact statutes, even though in general words, that can extend in their operation and effect beyond the territory of the sovereignty from which the statute emanates. The legislative authority of every state must spend its force within the territorial limits of the state. Cooley's Cons. Lim. p. 154. As a general rule, no law has any effect of its own force beyond the territorial limits of the sovereignty from which its authority is derived. 25 R. C. L. 781; Hilton v. Guyot, 159 U.S. 113,16 Sup.Ct. 139, 40 L.Ed. 95. (Emphasis supplied.) Continuing, the court stated: Black, on Interpretation of Laws, p. 91, says: "Prima facie, every statute is confined in its operation to the persons, property, rights, or contracts, which are within the territorial jurisdiction of the Legislature which enacted it. The presumption is always against any intention to attempt giving to the act an extraterritorial operation and effect." (Emphasis supplied.) Accordingly, s. 659.24, F.S., does not authorize the Department of Banking and Finance to designate out-of-state banks as depositories of public moneys of the various municipalities and other public bodies of the State of Florida. Section 659.24 must be read in recognition of the jurisdictional limitations on legislative power and the rules of construction mentioned herein. Chapters 165 and 166, F.S., have both been examined and nothing contained therein is inconsistent with the conclusions found herein. Presumably the various municipalities have appropriate ordinances authorizing the city to avail itself of the prerogatives of s. 659.24. It should be emphasized that this opinion deals only with the power or authority of the Department of Banking and Finance under s. 659.24 to designate out-of-state banks as depositories to receive deposits of public funds of various public bodies of the State of Florida. It does not deal with those situations authorized under s. 660.10(8), F.S., where out-of-state banks act as fiscal agents, transfer agents, or registrars of municipalities and does not deal with investments.